UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BARRINGTON CHRISTIE,**

    **Petitioner,**

-vs-                                              **Case No. 8:04-CV-2560-T-27MSS**
                                                    **Criminal Case No. 8:02-CR-36-T-21**

**UNITED STATES OF AMERICA,**

    **Respondent.**
_____/

**ORDER**

This matter is before the Court upon Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (CV Dkt. 1), the United States's Response in Opposition (CV Dkt. 9) and Petitioner's Reply (CV Dkt. 11). Upon review in accordance with Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts[1], Petitioner's motion is DENIED.

**Procedural History**

Petitioner was charged in two counts of a four count Indictment with conspiracy to distribute and to possess with intent to distribute fifty grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) and distributing and possessing with intent to distribute fifty grams or more of cocaine base (crack cocaine) in violation of 21 U.S.C. §§ 841(a)(1) and 841(B)(1)(A)(iii) (CR Dkt. 1). Prior to trial, the United States filed an Information pursuant to 21 U.S.C. § 851 advising the trial court and Petitioner of its intent to seek an enhanced sentence

---

[1] Rule 4(b) provides, in pertinent part, that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party."

based on Petitioner's five prior convictions for possession of cocaine (CR Dkt. 39). Petitioner, through counsel, filed a response and motion to dismiss the Indictment on various constitutional grounds in which he also sought permission to present a jury nullification defense and to advise the jury of the possible penalty he faced (CR Dkt. 47). The district court denied Petitioner's motion and request (CR Dkt. 73). Following a jury trial, Petitioner was convicted of both counts (CR Dkts. 81, 83). Pursuant to the enhanced penalty provisions of 21 U.S.C. 841(b)(1)(A)(iii), Petitioner was sentenced to a mandatory life term on each count (CR Dkts. 107, 109). Petitioner's conviction and sentence were affirmed on appeal (CR Dkt. 131); *United States v. Christie*, 82 Fed.Appx. 214 (Table) (11th Cir. 2003); *cert. denied*, *Christie v. United States*, 540 U.S. 1061 (2003).

In his §2255 motion, Petitioner raises the following claims for relief:

(1) his trial attorney rendered ineffective assistance in failing to challenge the court's application of the sentencing enhancement without the court requiring the government to prove drug type and quantity;

(2) his appellate attorney rendered ineffective assistance in failing to raise as an issue on appeal the trial court's allowing Special Agent Dale Van Dorple of the Drug Enforcement Administration to testify as an expert witness;

(3) the district court lacked jurisdiction to enhance Petitioner's sentence pursuant to 21 U.S.C. § 851;

(4) his Sixth Amendment right to trial by jury was violated where the jury did not find that he was subject to the enhancement provisions of 21 U.S.C. § 851 nor that he had two prior felony drug convictions sufficient to warrant application of 21 U.S.C. § 851;

(5) his trial attorney rendered ineffective assistance in failing to raise and adequately argue that the Government did not notify the Jamaican consulate of his arrest in violation of the Vienna Convention on Consular Relations;

(6) the Indictment should have been dismissed because it did not allege his prior convictions as to justify application of the sentencing enhancement provisions of 21 U.S.C. § 851; and

(7) his Fifth and Sixth Amendment rights were violated where the drug type, drug quantity and his prior felony convictions were not presented to the jury.

2

**Standard of Review**

Title 28, United States Code, Section 2255 provides the framework for reviewing a federal prisoner's sentence under four circumstances: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Collateral relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988). Generally, only constitutional claims, jurisdictional claims and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable in a § 2255 motion for relief. *See United States v. Addonizio*, 442 U.S. 178, 184-86, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

**GROUNDS ONE, TWO AND FIVE**

In the instant motion, Petitioner raises three claims of ineffective assistance of counsel. The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, (1984). First, Petitioner must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation. *Id.* at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Second, even if Petitioner can show that counsel performed incompetently, he must also show that he was prejudiced in such a manner that, but for counsel's errors, there exists a reasonable probability that

3

the outcome of the proceeding would have been different. *Id.* at 688, 694. A "reasonable probability" is one that is "...sufficient to undermine confidence in the outcome" of the proceedings. *Id.* at 694.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) *(citing Chandler*, 218 F.3d at 1315). Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (*quoting Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment. As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act." Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

In Ground One of his § 2255 motion, Petitioner alleges his trial attorney was ineffective at trial and sentencing in failing to argue that the Government failed to prove that the substance at issue contained the threshold amount of cocaine base sufficient to trigger a sentence enhancement pursuant

4

to 21 U.S.C. § 851. Petitioner claims that during trial, the Government presented as evidence a "liquid substance form" of cocaine that was not crack cocaine. He further claims that his trial attorney was ineffective in allowing the court to impose a life sentence without requiring the Government to prove the type and quantity of the substance alleged in the Indictment.

A review of the record clearly refutes Petitioner's assertions. The evidence adduced at trial shows that on June 1, 2001 and July 31, 2001 Officer Brionne Shegstad of the Tampa Police Department and a confidential source purchased crack cocaine from Petitioner (CR Dkt. 120, pp. 10-31). Each purchase was for 125 grams of crack cocaine (CR Dkt. 120, pp. 18, 27). At trial, the Government put on two witnesses who testified to the chemical composition of the substance at issue. First, Maria Hernandez ("Hernandez"), a forensic chemist at the Drug Enforcement Administration ("DEA") laboratory in Miami, Florida testified that her testing of the substance recovered in the June 1 purchase contained 120.4 grams of cocaine base (CR Dkt. 120, p. 75). Petitioner is correct that the cocaine base introduced into evidence at trial was in a "liquid substance form." Contrary to his assertion, however, the substance was, in fact, crack cocaine. When asked to explain why the substance introduced at trial was no longer in rock-like form, Hernandez testified as follows:

> Prosecutor:   Ms. Hernandez, are you able to explain to the jury why that substance is no longer in the rock like form that you described?
>
> Hernandez:   Yes. This is basically, we see it all the time, and what has happened is that the substance now is a little bit mushy and you have water coming out. And this happens a lot. We see this a lot with cocaine base or crack cocaine. And the reason why is because basically if we go back to the process where cocaine base or crack is formed, water is actually in the substance. So, even though you see a cookie or you see a rock like substance and it seems completely solid, it does contain water. After a while, especially after the analysis is performed and we grind it, some of that water comes out, because it has been in plastic for so long, because of the heat, the humidity, water comes out. But it's not like water is present there for no reason. It's just water was there at the beginning, and it's just coming out of the substance.

5

> It was at the beginning very solid rick like substance, but it had water inside, and that water is coming out as time passes.

(CR Dkt. 120, pp. 75-76). As to the substance recovered in the July 31 purchase, the Government called DEA forensic chemist Patricia Burn-de Vazquez ("Burn-de Vazquez") as a witness to testify to her findings of her analysis of that substance. Burn-deVazquez testified that testing revealed the substance contained 119.9 grams of cocaine base (CR Dkt. 120, p. 81).

In its verdict, the jury found Petitioner guilty beyond a reasonable doubt of conspiring to possess and possessing with intent to distribute a quantity of crack cocaine in excess of fifty grams as charged in the Indictment (CR Dkt. 83). Contrary to Petitioner's assertions, it is clear from the record that the Government proved that the substance at issue contained crack cocaine in excess of fifty grams as alleged in the Indictment. In light of the trial testimony and the jury's verdict, Petitioner cannot establish that he suffered any prejudice as a result of his trial attorney's failure to argue that the substance at issue was not crack cocaine or that its weight was less than fifty grams. Counsel was not obligated to raise a frivolous issue. *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992); *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) *(citing United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)). Accordingly, having failed to establish that he was prejudiced by trial counsel's alleged deficient performance, Petitioner cannot satisfy *Strickland's* standard and is not entitled to relief on Ground One. *See Strickland*, 466 U.S. at 697.

In Ground Two, Petitioner alleges that his appellate attorney[2] rendered ineffective assistance in failing to raise on appeal the trial court's alleged reversible error in allowing DEA Special Agent Dale Van Dorple ("Van Dorple") to testify as an expert witness. Petitioner relies on the decision in *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Rule 7 of the Federal Rules of

---

[2] Petitioner was represented at trial and on appeal by attorney Ellis Rexwood Curry.

Criminal Procedure to support his contention that the district court improperly allowed Van Dorple to testify as to the "chemistry aspects of the substance at issue and the dilution of the substance" (CV Dkt. 6, p.9). He asserts that his attorney's failure to raise this issue on appeal prejudiced him as evidenced by the appellate court's affirmation of his convictions and sentence.

The *Strickland* standard of review applies to ineffective assistance of appellate counsel claims. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991), *cert. denied*, 502 U.S. 1077 (1992). In *Jones v. Barnes*, 463 U.S. 745 (1983), the Supreme Court held that the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue. To the contrary, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52.

A review of the record reflects that Van Dorple was not tendered as an expert witness. At trial, Van Dorple testified to the condition of the crack cocaine purchased on June 1, 2001 by Officer Shegstad and the confidential source to which Petitioner's attorney objected.[3] Eleventh Circuit

---

[3] Van Dorple testified on direct examination as follows:

| | |
|---|---|
| Prosecutor: | I'd like to show you what's been marked for identification purposes as Government's Exhibit Number 1 and ask you if you recognize that exhibit? |
| Van Dorple: | Yes sir, I do. |
| Prosecutor: | Is that the items [sic] received from Officer Shegstad on June 1st of 2001? |
| Van Dorple: | Yes sir, it is. |
| Prosecutor: | Was this later sent to the drug enforcement laboratory for testing? |
| Van Dorple: | Yes sir, it was. |
| Prosecutor: | Is the substance in Government's Exhibit Number 1 in the same condition as it was when you received it? |
| Van Dorple: | No sir, it is not. |

(continued...)

³(...continued)

| | |
|---|---|
| Prosecutor: | What differences do you see in the item that's in there now? |
| Van Dorple: | When Officer Shegstad with the Tampa Police Department had purchased these drugs, on June 1st of 2001, the crack cocaine or cocaine base, commonly referred to as crack cocaine, was more in a, what we call a cookie form. It looked very similar to, for instance, a sugar cookie, kind of light-colored, round broken up, but it was more – it was in a solid form at this point. At this point it's in a liquid, pretty much a liquid form. |
| Prosecutor: | Why is that? |
| Van Dorple: | Just over a period of time. It's been almost a year. It just breaks down into a liquid form. |
| Mr. Curry: | Your Honor, I would like to object as far as expertise goes. |
| The Court: | Lay a foundation, please. |
| Prosecutor: | Have you dealt with this substance crack cocaine during the course of your time with the Drug Enforcement Administration? |
| Van Dorple: | Yes sir, I have. |
| Prosecutor: | Have you seen it in its various forms and various stages in regard to the manufacture and later aging process? |
| Van Dorple: | Yes sir, I have. |
| Prosecutor: | And was your examination of the substance when it was received from Detective Shegstad as well as its condition today consistent with your observations at those various points in your experience? |
| Van Dorple: | That is correct. Yes sir. |
| Prosecutor: | And are you able to tell us why that's in liquid form right now, generally speaking? |
| Van Dorple: | Yes sir. Basically, when they convert powdered cocaine, cocaine hydrochloride -- |
| Mr. Curry: | Your Honor, I'll make the same objection. |
| The Court: | That is overruled. |
| Van Dorple: | When they – when people convert cocaine hydrochloride, which is basically powder cocaine, they actually boil it in water and mix it with three parts baking soda. They actually turn it into a liquid form, and then they cool it, and it then converts itself into the cocaine base, which they then scrape off and cool, and they put it in bottom of plates, for instance, and that gives it its cookie form. So it's actually in a liquid form to start. It's cooled, and it dries into a harder form, and then of course over a period of time it's going to break back down into the |

(continued...)

8

precedent establishes that law enforcement officers may testify as lay witnesses "based upon their particularized knowledge garnered from years of experience within the field." *United States v.*

---

[3](...continued)

| | |
|---|---|
| | liquid form. |
| Prosecutor: | Is that why in particular crack cocaine is maintained in these heat sealed packages? |
| Van Dorple: | Yes. That's correct. |
| Prosecutor: | I would move Government's Exhibit Number 1 into evidence subject to chemist testimony, Your Honor. |
| Mr. Curry: | May we approach, Judge? |
| The Court: | Yes sir, you may. |

(Discussion at Side-Bar on the record)

| | |
|---|---|
| Mr. Curry: | Judge, I would just like to, of course, reiterate my objection to expert testimony, his qualifications as an expert about what happened from discovery that this stuff, apparently from that date in June 1st, 2001, sat around, was just tested within – I think within days or the last couple of weeks or something April 25th, 2002. That was the date that I had on a report. Maybe I'm wrong. I'll go look at it again. So I'm going to make a chain of custody objection. I don't think he's able to identify that as the same substance at this time. And also the weight, I think that's going to be an issue in this case now. Apparently this thing's been absorbing moisture. It hasn't been properly kept, assuming it is the same stuff, which I don't think he could say clearly that it is based on his testimony right now. He doesn't know for sure that it's the same substance that he had. |
| The Court: | Response. |
| Prosecutor: | Judge, he's testified this is the package he received from Detective Shegstad. He's explained why it's in a different appearance type form based on his experience in the case. And chain of custody goes to the weight, not the admissibility. |
| The Court: | I agree. The objection will be overruled. |
| Mr. Curry: | Thank you, Judge. |

(Discussion at Side-Bar concluded.)

| | |
|---|---|
| The Court: | The objection is overruled. Subject to the testimony of a chemist, whose scheduled to be here in the next 15 to 20 minutes, Government's Exhibit 1 will be received. |

(CR Dkt. 120, pp. 44-48).

9

*Cannon*, 149 Fed.Appx. 937, 941 (11th Cir. 2005) (*quoting Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003)).  Aside from his own conclusory opinion that his attorney should have raised this issue on appeal, Petitioner fails to present any evidentiary support for his contention and thus cannot establish that he was prejudiced by his attorney's failure to pursue the strategy he now suggests in hindsight.  To the extent that Van Dorple was not presented as an expert witness, the application of the standards for admissibility of expert testimony required by Rule 7 and *Daubert* were not applicable at trial.  Accordingly, there was no basis for Petitioner's attorney to raise this issue on appeal.  Petitioner has failed to show that appellate counsel's failure to raise this issue on appeal was unreasonable or that the results would have been different if his attorney had raised the issue.  Thus, Petitioner is not entitled to relief on Ground Two.

In Ground Five, Petitioner alleges his attorney rendered ineffective assistance in failing to argue that the Government did not notify the Jamaican Consulate of his arrest in violation of the Vienna Convention on Consular Relations ("Vienna Convention").[4]  Petitioner's sole argument is that his attorney was ineffective because he failed to familiarize himself with the Vienna Convention and "take actions" on Petitioner's behalf in accordance therewith.  As a threshold matter, Petitioner presents no evidence that he is a Jamaican national or that he is subject to the provisions of the

---

[4] Article 36 of the Vienna Convention on Consular Relations provides in relevant part:

 (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested, in prison, custody or detention shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.;

*Vienna Convention on Consular Relations*, art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 101, T.I.A.S. No. 6820.

Vienna Convention.[5] He does not describe what "actions" he believes his attorney should have taken and fails to present any factual or evidentiary support for his claim aside from his opinion that his attorney should have been aware of this particular treaty. Petitioner argues in his Reply that he was prejudiced by this alleged omission by his attorney because "had he consulted with counsel from Jamaica, he could have ascertained the severity of the charges against him, the Americana [sic] lack of tolerance for drug crimes, as well as a relationship with defense counsel below" (CV Dkt. 11, pp. 13-14). He further alleges that if his attorney had raised this issue, "it would have been viewed under a different standard of review than the higher standard of review applied for the instant collateral proceeding" (CV Dkt. 11, p. 15).

Petitioner does not contend that his attorney failed to explain the severity of the charges he faced. He does not provide any factual or evidentiary support for his allegation that a different standard of review would have been applied in his case had his attorney raised this issue at trial. Petitioner has not demonstrated that his attorney's performance was objectively unreasonable or that he was prejudiced in any way or that the outcome of his trial would have been different had his attorney raised the claim he now makes. Having failed to satisfy the *Strickland* standard, relief on this ground of Petitioner's §2255 motion will be denied.

**GROUND THREE**

In Ground Three of his motion, Petitioner asserts that the district court lacked jurisdiction to enhance his sentence pursuant to 28 U.S.C. § 851 because the Assistant United States Attorney lacked authority to file the Government's Information and Notice of Prior Convictions (CR Dkt. 39). Petitioner claims that only the United States Attorney himself can file the Information. Respondent

---

[5] Jamaica and the United States are parties to the Vienna Convention+. *See Vienna Convention on Consular Relations*, art. 36(1)(b), Apr. 24, 1963, 21 U.S.T. 77, 101, T.I.A.S. No. 6820.

11

asserts this claim is defaulted and frivolous.

Petitioner did not raise this issue on direct appeal. Section 2255 is not intended to be a substitute for direct appeal. *See Lynn v. United States*, 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994). Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Richards*, 837 F.2d at 966 (*quoting United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981)). Petitioner's claim that the United States Attorney is required to sign an Information and Notice pursuant to 28 U.S.C. § 851 is a non-constitutional claim that does not provide a basis for collateral relief absent a showing that a denial of relief would result in a miscarriage of justice. As a threshold matter, Petitioner has not made this requisite showing. Accordingly, the Court finds that this claim of Petitioner's § 2255 motion is not cognizable on collateral review.

Even assuming *arguendo* that this claim were cognizable, it is procedurally defaulted and barred from consideration on collateral review. Where a petitioner has failed to raise claims that could and should have been raised at sentencing or on direct appeal, district court review of such claims is barred absent a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998); *United States v. Frady*, 456 U.S. 152, 167-70, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). To show cause for not raising a claim on direct appeal, Petitioner must show that "some objective factor external to the defense impeded counsel's efforts" to raise the claim previously. *Lynn*, 365 F.3d at 1235 , n. 20 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). To show prejudice, Petitioner must demonstrate that "errors at trial actually and substantially disadvantaged his defense

so that he was denied fundamental fairness." *Wright v. Hopper*, 169 F.3d 695, 706 (11th Cir. 1999) (internal citations omitted). To establish actual innocence, Petitioner must demonstrate that in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him. This means factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623-24.

In the instant case, Petitioner has not made any showing of cause and prejudice. Furthermore, there is no evidence establishing that Petitioner is actually innocent. Therefore, Petitioner is procedurally barred from raising the claim made in Ground Three.

**GROUNDS FOUR, SIX AND SEVEN**

As to Grounds Four, Six and Seven, Respondent contends that Petitioner's claims related to his sentence enhancements pursuant to 21 U.S.C. § 851 were previously resolved on direct appeal and are therefore not cognizable in this § 2255 motion. Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a § 2255 proceeding. *Davis v. United States*, 417 U.S. 333 (1974); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). "Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under § 2255." *Nyhuis*, 211 F.3d at 1343 (*quoting United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)); *see also Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (a § 2255 motion is "neither a recapitulation of nor a substitute" for direct appeal; absent changed circumstances of fact or law, the court will not reconsider an issue already decided on direct appeal).

A review of the record demonstrates that Petitioner previously raised the issues related to his sentence enhancements he now presents in the instant motion on direct appeal. Specifically, the claim raised in Ground Four of his § 2255 motion, that his Sixth Amendment right to trial by jury was violated where the jury did not find that he was subject to the enhancement provisions of 21 U.S.C. § 851 or that he had two prior felony drug convictions sufficient to warrant application of 21

13

U.S.C. 851, the claim raised in Ground Six that the Indictment should have been dismissed because it did not allege his prior convictions as to justify application of the sentencing enhancement provisions of 21 U.S.C. § 851, and the claim raised in Ground Seven that his Fifth and Sixth Amendment rights were violated where the drug type, drug quantity and his prior felony convictions were not presented to the jury were all raised on direct appeal (CV Dkt. 9, Ex. 2). The Eleventh Circuit rejected these claims and affirmed Petitioner's conviction (CV Dkt. 9, Ex. 2). Accordingly, the Court finds that the issues raised in Grounds Four, Six and Seven of Petitioner's § 2255 motion are procedurally barred due to prior resolution by the Eleventh Circuit and cannot be re-litigated on collateral review.

ACCORDINGLY, is hereby **ORDERED AND ADJUDGED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Dkt. 1) is **DENIED**.

2. The Clerk shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**ORDERED** in Tampa, Florida, on October 5th, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Petitioner
Counsel of Record
SA/kw